Sharon McCLOUD, Appellant,

v.

**COMMONWEALTH of Kentucky,**
**Appellee.**

No. 2006–CA–002498–MR.

Court of Appeals of Kentucky.

Oct. 12, 2007.

Discretionary Review Denied by Supreme Court April 15, 2009.

Susan Jackson Balliet, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, for appellant.

Gregory D. Stumbo, Attorney General, George G. Seelig, Gregory C. Fuchs, Assistant Attorney General, Frankfort, KY, for appellee.

Before LAMBERT, TAYLOR, and WINE, Judges.

## OPINION

TAYLOR, Judge.

Sharon McCloud brings this appeal from a November 13, 2006, judgment of the Grayson Circuit Court upon a conditional plea of guilty to first-degree possession of a controlled substance (Kentucky Revised Statutes (KRS) 218A.1415), possession of drug paraphernalia (KRS 218A.500(2)),

and possession of marijuana (KRS 218A.1422). We affirm.

On December 22, 2005, Deputies Terry Blanton and Jerry Henderson of the Grayson County Sheriff's Office were dispatched to serve an arrest warrant upon McCloud at her residence on Claggett Road in Leitchfield, Kentucky, for her failure to appear in Hardin District Court. Although the warrant listed McCloud's address as "406 West Chestnut, Leitchfield, Kentucky," Deputy Blanton believed McCloud had recently moved to Claggett Road. Deputy Henderson was familiar with the location of McCloud's residence as he had previously surveilled the residence for suspicious drug activity. The deputies proceeded to Claggett Road where McCloud was believed to reside. The deputies turned off Claggett Road and onto a gravel driveway where two trailers were located on each side of the driveway. The deputies then approached the trailer situated on the right. Deputy Henderson went to the front door while Deputy Blanton walked to the rear of the residence to secure the back door. When McCloud answered Henderson's knock on the front door, she was placed under arrest pursuant to the arrest warrant. However, while covering the rear of the trailer, Deputy Blanton observed several items customarily used in the manufacturing of methamphetamine.

Based upon the items viewed at the residence and upon information Blanton previously secured regarding McCloud's recent purchase of pseudoephedrine from a Wal–Mart pharmacy, Deputy Blanton obtained a search warrant for McCloud's residence from the Grayson District Court. The search warrant directed a search of the premises known as "460 Claggett Road" and, more particularly, described as the "first trailer on the right." Several items of drug paraphernalia, methamphet-amine, and marijuana were ultimately seized from McCloud's residence during the search.

McCloud was indicted by a Grayson County Grand Jury upon first-degree possession of a controlled substance, possession of drug paraphernalia, and possession of marijuana. McCloud filed a motion to suppress evidence seized from her residence. Following an evidentiary hearing, the motion to suppress was denied. McCloud subsequently entered a conditional plea of guilty to the charges but reserved her right to appeal the denial of her motion to suppress. Ky. R. Crim P. (RCr) 8.09. This appeal follows.

◼ McCloud contends the circuit court erred by denying the motion to suppress evidence seized from her residence. Specifically, McCloud asserts that the search warrant lacked particularity in describing the place to be searched (her residence), thus violating the Fourth Amendment to the U.S. Constitution and Section 10 of the Kentucky Constitution.

Our standard when reviewing a trial court's decision on a motion to suppress evidence initially looks to whether the trial court's findings of fact are supported by substantial evidence. If the findings of fact are supported by substantial evidence, such findings are conclusive. RCr 9.78. Based on the findings of fact, we then conduct a *de novo* review of the trial court's application of the law to those facts to determine whether its decision is correct as a matter of law. *Com. v. Neal*, 84 S.W.3d 920 (Ky.App.2002); *see also Nichols v. Com.*, 186 S.W.3d 761 (Ky.App.2005).

◼ It is well-established that a search warrant must describe with particularity the place to be searched under the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Con-

stitution.[1] This particularity requirement is satisfied if the description in the search warrant enables the officer executing the warrant to identify the place to be searched with reasonable effort. *Duff v. Com.*, 464 S.W.2d 264 (Ky.1971); *Com. v. Smith*, 898 S.W.2d 496 (Ky.App.1995); *see also* 68 Am.Jur.2d *Searches and Seizures* § 211 (2000).

McCloud argues the search warrant lacked sufficient particularity because it contained an incorrect address for the residence to be searched. The search warrant read, in part:

> [Y]ou are commanded to make an immediate search of the premise known and numbered as 460 Claggett Road, Leitchfield Grayson County, Kentucky and more particularly described as follows:
>
> Beginning at the Grayson County Courthouse, Public Square, Leitchfield, travel West on Highway 54 for 3.7 miles, turning right onto Claggett Road travel north 4.10ths of a mile. There are two mailboxes one numbered 424 and 460. Turn right into a gravel driveway and stay to the left for a 1/10th of a mile ending at the first trailer on the right.

The search warrant listed the premises to be searched as "460 Claggett Road;" however, McCloud's correct address and the actual premises to be searched was 456 Claggett Road.[2] McCloud argues the erroneous address in the search warrant created a reasonable probability that the wrong residence would be searched, thus violating the particularity requirement of Section 10 of the Kentucky Constitution and

the Fourth Amendment of the U.S. Constitution. We disagree.

Although never specifically articulated in this Commonwealth, we are persuaded that a search warrant containing an incorrect address for the premises to be searched may still be constitutionally valid if the warrant contains a description of the premises to be searched with such particularity that the officer executing the warrant is able to identify the place to be searched with reasonable effort. *See* 68 Am.Jur.2d *Searches and Seizures* § 213 (2000).

In the case *sub judice*, the search warrant contained a detailed description of the premises to be searched. Although the warrant contained the wrong address, the warrant clearly recited that the premises to be searched was "the first trailer on the right." As there only existed two trailers at the end of the driveway, one on the left and one on the right, an officer exercising reasonable effort could easily ascertain the proper trailer to be searched. Additionally, Deputy Henderson knew the trailer on the right was appellant's residence and had served the Hardin County arrest warrant upon McCloud at the trailer earlier that day. When Deputy Henderson returned to execute the search warrant, he was obviously able to identify the correct premises to be searched under the search warrant.

Considering the description of the premises to be searched contained in the warrant and Deputy Henderson's prior knowledge concerning the correct location of McCloud's trailer, we do not believe the

---

**1.** The Kentucky Supreme Court has recognized that the protection afforded by Section 10 of the Kentucky Constitution against unreasonable search and seizure is coextensive with the protection afforded by the Fourth Amendment of the U.S. Constitution. *LaFollette v. Com.*, 915 S.W.2d 747 (Ky.1996).

**2.** At the suppression hearing, there was testimony presented that McCloud's address was actually 456 Claggett Road and was the trailer on the right side of the driveway.

search warrant violated the particularity requirement of Section 10 of the Kentucky Constitution or the Fourth Amendment of the U.S. Constitution.

■ McCloud also argues that Deputy Blanton's actions at the time the arrest warrant was served violated her right to be free from unreasonable search and seizure as secured by the Fourth Amendment of the U.S. Constitution and Section 10 of the Kentucky Constitution. Specifically, McCloud maintains that Deputy Blanton unlawfully proceeded to the rear of the trailer when executing the arrest warrant and improperly invaded the curtilage of her private residence. In particular, McCloud contends:

> Officer Blanton had no right to send his partner to the front door and simultaneously run around back and search the curtilage area behind Sharon McCloud's trailer on December 22, 2005....
>
> ....
>
> Blanton testified that Sharon [McCloud] answered the front door immediately on December 22, 2005. He was there to arrest her, to be sure, but for cold checks, and not for any violent offense. There was no evidence that Sharon had ever resisted or fled from the police on any prior occasion, no evidence that she had any weapons or posed any threat, and no evidence was offered to justify Blanton's trespass in the back yard area of the two trailers. The officers were not in "hot pursuit" of Ms. McCloud, and were not justified to search her back yard on that basis.

Certainly no "safety check" or "protective sweep" was "necessary" and Officer Blanton was not justified in running around back to search for signs of manufacturing methamphetamine....

McCloud's Brief at 16–17. McCloud points out that Deputy Blanton observed items consistent with manufacturing methamphetamine while behind the trailer.[3] McCloud argues that such evidence of manufacturing methamphetamine was included in Deputy Blanton's affidavit to establish probable cause to secure the search warrant.

An arrest warrant authorizes a limited invasion of the arrestee's privacy interest in order to execute the warrant. 6A C.J.S. *Arrest* § 56 (2004). A valid arrest warrant also permits the police to enter the home of the arrestee to serve the warrant.[4] It is uncontroverted that Deputy Blanton was participating in the execution of a lawful arrest warrant at the time he approached the rear of McCloud's trailer. He proceeded to the rear of the trailer in order to secure the rear door of the trailer to aid in effectuating the arrest. As a valid arrest warrant authorizes a limited invasion of the arrestee's privacy interest and, more specifically, authorizes entry into the arrestee's home, we conclude that a valid arrest warrant also authorizes the police to enter that part of the curtilage of a private residence necessary to secure the rear door of the residence. 6A C.J.S. *Arrest* § 55 (2004). Accordingly, we hold that Deputy Blanton properly proceeded to the

---

3. According to the affidavit of Deputy Terry Blanton, he observed a "mason jar sitting beside of a burn barrel ... [and] what appeared to be a paper towel inside the jar with what appeared to be a pink color residue on it believed to be pseudoephedrine. There was also white powder substance in the bottom of the jar .... [and] several cans of what ap-

peared to be starting fluid cans inside the barrel."

4. This limited invasion into the arrestee's home is only justified when the police possess a reasonable belief that the arrestee is within the home. 6A C.J.S. *Arrest* § 56 (2004).

rear door of McCloud's trailer in execution of the arrest warrant.

■ McCloud finally contends that the affidavit submitted by Deputy Blanton was insufficient to establish probable cause to issue the search warrant. Specifically, McCloud contends Deputy Blanton's affidavit contained false statements made with reckless disregard for the truth.

■■ It is axiomatic that a search warrant may only be issued upon a finding of probable cause. *See Dixon v. Com.*, 890 S.W.2d 629 (Ky.App.1994). Probable cause exists for the issuance of a search warrant if there is a fair probability that contraband or evidence of criminal activity will be found in the place to be searched. *Moore v. Com.*, 159 S.W.3d 325 (Ky.2005). Specifically, McCloud claims that Deputy Blanton erroneously stated in the affidavit that McCloud purchased "two boxes of 48 count 120mg pseudoephedrine" from Wal-Mart on December 2, 2005. McCloud points out that the Wal-Mart pharmacy summary sheet revealed she actually only purchased two boxes of 20 count 120mg pseudoephedrine.

■ To successfully attack a facially sufficient affidavit, defendant must demonstrate:

> (1)[T]he affidavit contains intentionally or recklessly false statements, and (2) the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause.

*Com. v. Smith*, 898 S.W.2d 496, 503 (Ky. App.1995).

In the case at hand, if Deputy Blanton's affidavit was purged of the allegedly false information, it would still be sufficient to support a finding of probable cause.[5] *See*

*id.* The affidavit also contained the following information regarding evidence of manufacturing methamphetamine observed by Deputy Blanton at McCloud's residence:

> Detective Blanton noticed a mason jar sitting beside of a burn barrel in the left back corner of the residence. Detective Blanton noticed what appeared to be a paper towel inside the jar with what appeared to be a pink color residue on it believed to be pseudoephedrine. There was also white powder substance in the bottom of the jar. Detective Blanton also saw several cans of what appeared to be starting fluid cans inside the barrel.

The actual observation of various items consistent with manufacturing methamphetamine by Deputy Blanton at McCloud's residence provided probable cause to issue the search warrant. Simply put, there existed a fair probability that contraband and evidence of a crime would be found at McCloud's residence.

Upon the whole, we are of the opinion the circuit court properly denied McCloud's motion to suppress evidence seized from her residence.

For the foregoing reasons, the judgment of the Grayson Circuit Court is affirmed.

ALL CONCUR.

■

---

5. We would note that the Wal-Mart pharmacy sheet or log was very confusing and could easily result in misreading, thus causing inaccurate information being placed in Blanton's affidavit.